FILED
2022 Aug-22 PM 12:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **AUSTIN RICHARDS,**<br>**Individually and on behalf of all others**<br>**similarly situated,**<br><br>      *Plaintiff,*<br><br>      v.<br><br>**AMWASTE, LLC,**<br><br>      *Defendant.* | **Case No. 2:22-cv-00221-SGC**<br><br>**JURY TRIAL DEMANDED**<br><br>**COLLECTIVE ACTION PURSUANT**<br>**TO 29 U.S.C. § 216(b)** |

---

**PLAINTIFF'S OPPOSED AMENDED MOTION FOR CONDITIONAL
CERTIFICATION AND NOTICE TO THE PUTATIVE CLASS MEMBERS AND
INCORPORATED MEMORANDUM OF LAW**

---

**TO THE HONORABLE R DAVID PROCTOR:**

Plaintiff Austin Richards, individually and on behalf all Opt-In Plaintiffs and others similarly situated ("Plaintiffs and the Putative Class Members") file this Motion for Conditional Certification and Notice to the Putative Class Members and request the entry of an Order conditionally certifying this matter as a collective action pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et, seq.,* and requesting approval of a written notice to the putative collective action members. Plaintiffs request that Defendant AmWaste, LLC ("AmWaste") be ordered to produce the names, last-known addresses, last known e-mail addresses, last-known cellular phone numbers, and dates of employment of all putative collective action members for notice purposes. Plaintiffs have complied with all pleading requirements to assert a collective action under the FLSA. The Parties have discussed certification via phone call on several occasions since the beginning of this case. In each conversation, Defendant has stated it will not agree to conditional certification and notice.

# I.
## INTRODUCTION

AmWaste blatantly violated (and continues to violate) the FLSA by automatically deducting thirty (30) minutes a day for a meal-period break that was rarely, if ever, taken. As a result, Plaintiffs seek conditional certification of an FLSA collective action on behalf of AmWaste's Waste Disposal Drivers[1] who performed the same type of work and are subjected to the same unlawful compensation policies—that is, unpaid meal breaks that were worked through on a regular (if not daily) basis.

Conditional certification of this matter is in accordance with the overwhelming precedent in the Eleventh Circuit because the Plaintiffs have more than made a "modest factual showing" and met the "minimal burden" to establish that they and the Putative Class Members are similarly situated. *See Dybach v. State of Florida, Dept. of Corrections*, 942 F.2d 1562 (11th Cir. 1991) (explaining lenient burden); *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008) (stating at the initial stage, courts apply a "fairly lenient standard"); *Manasco v. Best In Town, Inc.*, No. 2:21-CV-00381-JHE, 2022 WL 816469, at *8 (N.D. Ala. Mar. 17, 2022) (using the two tier conditional certification standard and certifying the collective based on three declarations); *Morrison v. G&S Glass & Supply, Inc.*, No. 2:19-CV-01990-SGC, 2021 WL 4477637, at *6 (N.D. Ala. Sept. 30, 2021) (same).

As will be addressed in greater detail below, Plaintiffs have submitted four (4) declarations from current and former AmWaste Waste Disposal Drivers identifying that they were (and are) all subject to the same uniform (and illegal) pay policies, regularly worked more than forty (40) hours a week, and were not properly compensated for all of their overtime hours worked. Conditional certification of this matter is warranted, and notice should issue to the Putative Class Members, so

---

[1] The term Waste Disposal Driver is an omnibus term designed to incorporate any driver who worked for AmWaste who was subjected to an automatic meal break deduction such as Roll Off Drivers, Residential Drivers but also drivers who did not strictly transport only waste products, such as Pump Truck Drivers and Port-a-Let Drivers.

that they may learn of the existence of this lawsuit and choose to exercise their right to opt-in as party plaintiffs.

## II.
## STATEMENT OF FACTS

AmWaste is a full-service waste and recycling company operating in Alabama, Georgia, and Louisiana.[2] To provide these services, AmWaste employs hundreds of Waste Disposal Drivers—including Plaintiffs and the Putative Class Members. While exact job titles may differ, these employees were subjected to the same or similar illegal pay practices for similar work in the waste disposal industry. Currently, two (2) Plaintiffs who have worked for AmWaste as Waste Disposal Drivers and have not signed arbitration agreements have opted into this matter by filing their consent forms. According to AmWaste there are approximately twenty-nine (29) other Putative Class Members who have not signed arbitration agreements who would be eligible to join this case.

Plaintiffs and the Putative Class Members were (and are) non-exempt employees responsible for the collection, transportation, and delivery of waste and port-a-potties on behalf of AmWaste's customers throughout the Southeastern United States. *See* Declaration of Austin Richards (Exhibit 1), at ¶¶ 2–4; Declaration of Larry Roubdioux (Ex. 2) at ¶¶ 2–4; Declaration of Helen Foley (Ex. 3) at ¶¶ 2–4; Declaration of Richard Griffin (Ex. 4) at ¶¶ 2–4. Regardless of whether they were paid by the hour or were paid a flat rate for the day, each Plaintiff and Putative Class Member had a wage deduction applied to their daily wages for a meal break they did not always receive. *See* Exs. 1–4, ¶¶ 7. AmWaste made these deductions regardless of whether Plaintiffs and the Putative Class Members actually took their breaks, and in fact, applied them despite knowing that Plaintiffs and the Putative Class Members were rarely able to take a full 30-minute uninterrupted break because of their route schedule(s). *See* Exs. 1–4, ¶¶ 10–12. In fact, Plaintiffs and the Putative Class Members rarely, if ever,

---

[2] https://www.amwaste.net/about-amwaste.

took a lunch break. *See* Exs. 1–4, ¶¶ 8–9. Instead, they would regularly skip lunch entirely or eat while working—both with AmWaste's knowledge. *See* Exs. 1–4, ¶¶ 8–12. Plaintiffs even informed AmWaste they had not received their breaks by notifying their supervisors or by noting they did not take a break in their logbooks or route sheets. *See* Exs. 1–4, at ¶ 11. Despite this notice, AmWaste continued to apply the meal break deductions and failed to take any action to ensure the meal breaks were taken.

AmWaste's policy and practice of applying automatic meal period deductions described above applied (and continues to apply) to each Plaintiff and Putative Class Member and evinces AmWaste's systemic failure to comply with the overtime requirements of Section 207 of the FLSA.

## III.
## ISSUE PRESENTED

The issue herein is whether the Putative Class Members should be notified about the existence of this action so that they can make an informed decision about whether to join this suit and stop the statute of limitations from running on their claims for unpaid overtime compensation.

## IV.
## ARGUMENT AND AUTHORITY

**A.    LEGAL STANDARD FOR SECTION 216(b) NOTICE TO PUTATIVE CLASS MEMBERS**

Section 216(b) authorizes conditional certification of an FLSA collective action with notice to similarly situated employees of their right to have their claims resolved as part of this proceeding. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170—70, 1234-43 (1989). Employees must opt-in to the case by filing a written consent with the district court in order to be bound by the outcome of the case. *Albritton v. Cagles, Inc*, 508 F. 3d 1012 (11th Cir. 2007). Unless and until an employee files a consent to join, the statute of limitations on that employee's FLSA claim continues to run. 29 U.S.C. § 256. Because of the continual running of a claim a Putative Class Member may be unaware of until they receive the notice, Courts have noted the great importance of ruling on conditional certification quickly. *See Privette v. Waste Pro of N. Carolina, Inc.*, No. 2:19-CV-3221-DCN, 2020 WL 1892167, at *9

(D.S.C. Apr. 16, 2020) ("the claims of potential plaintiffs, 'die daily'" (quoting *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997)).

To facilitate notice to the similarly situated employees, district courts have authority to compel defendant-employers to provide the names and contact information of potential plaintiffs through the pretrial discovery process. *See Albritton v. Cagles, Inc*, 508 F. 3d 1012 (11th Cir. 2007). This authority includes sending court-authorized notice to potential opt-in plaintiffs regarding the lawsuit and their right to join. *Id.* In establishing these procedures, the Supreme Court recognized the benefits of a collective action:

> A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity. These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.

*Sperling*, 493 U.S. at 170.

The district court's authority to supervise notice to FLSA collective members derives from the broad discretionary power to manage the process of joining multiple parties in an orderly manner. *Id.* at 169–72. Because district court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of the District Court to begin its involvement early, at the point of the initial notice, rather than at some later time. *Id.* Court-authorization of the notice serves the legitimate goal of avoiding duplicative suits and setting cut-off dates to expedite disposition of the action. *Id.*

As with the rest of the country, the Eleventh Circuit follows the "two-tiered" approach for addressing FLSA collective actions. *See Hipp v. Liberty Nat'l Life Inc. Co.,* 252 F.3d 1208 at 1219; *Morgan*, 551 F.3d at 1260–61; *Manasco*, 2022 WL 816469, at *6; *Morrison*, 2021 WL 4477637, at *4; *McAnally v. Alabama Plumbing Contractor*, No. 2:19-CV-02033-RDP, 2021 WL 2514169, at *3 (N.D. Ala. Apr. 29, 2021). At the first "notice" stage, the district court makes a determination, based on the pleadings and

affidavits on file, of whether it should authorize notice of the action to potential class members. *See Hipp*, 252 F.3d at 1218. Because the court has minimal evidence, the standard is lenient. *Id*; *Manasco*, 2022 WL 816469, at *6–7; *Anderson v. Cagle's Inc.*, 488 F.3d 945, 952 (11th Cir. 2007) (recognizing the lenient standard applied to pre-discovery motions for conditional certification); *Aguirre-Molina v. Truscapes SW Fla Inc.,* No. 2:15-CV-608-FTM-38CM, 2016 WL 4472992, at *5 (M.D. Fla. Aug. 3, 2016), *report and recommendation adopted,* No. 2:15-CV-608-FTM-38CM, 2016 WL 4441468 (M.D. Fla. Aug. 23, 2016) (recognizing that "a more searching inquiry" is appropriate upon a motion for decertification after the parties have had a chance to develop the factual record). The district court must merely be satisfied that there are other employees who wish to opt-in, and that they are similarly situated to the original plaintiff "with respect to their job requirements and with regard to their pay provisions." *Morgan*, 551 F.3d at 1259 (quoting *Dybach,* 942 F.2d at 1567-68). This inquiry "typically results in 'conditional certification' of a representative class." *Hipp*, 252 F.2d at 1218. If the court conditionally certifies a class, court-supervised notice of the pendency of the action is then given to the potential class members, and they are afforded an opportunity to opt-in to the action. *See Id.*

The second stage of the process is activated by the defendant filing a decertification motion following the completion of discovery. *See Id.* At the second stage, based on a fully developed record, the court makes a determination of whether the named plaintiffs and the opt-ins are similarly situated. *See Id.* The plaintiff has a heavier burden to show similarity at the second stage than at the first stage. *Morgan*, 551 F.3d at 1261. If the court finds the plaintiffs are not similarly situated, it decertifies the action, dismisses the opt-in plaintiffs without prejudice, and the named plaintiffs proceed to trial on

their individual overtime claims. *See Hipp*, 252 F.3d at 1218. At all times, the decision to create an opt-in class under section § 216(b) "remains soundly within the discretion of the district court." *Id.* at 1219.

**B.    PLAINTIFF'S BURDEN IS LENIENT TO SHOW EMPLOYEES ARE "SIMILARLY SITUATED" FOR CONDITIONAL CERTIFICATION.**

Courts applying the two-stage approach refer to the plaintiff's burden at the first stage as "fairly lenient standard." *Morgan*, 551 F.3d at 1261 (citing *Anderson*, 488 F.3d at 953). At this stage, the plaintiffs must demonstrate a "reasonable basis for crediting their assertions that aggrieved individuals exist in the broad class that they proposed." *Sala v. St. Petersburg Kennel Club, Inc.*, 2010 WL 746703, at *2 (M.D. Fla. 2010) (citing *Haynes v. Singer Co., Inc.* 696 F.2d 884, 87 (11th Cir.1983)).

This standard is "lenient" to effectuate the broad remedial goals of the FLSA. *See Nadreau v. Lush Cosmetics, LLC,* 2011 WL 13143146 (M.D. Fla. 2011) at *3. Requiring a minimal initial showing that a plaintiff is similarly situated to the putative class furthers this purpose, as well as furthers the purpose of judicial economy. *See Williams v. Omainsky*, No. 15-0123-WS-N, 2016 WL 297718, at *4 (S.D. Ala. Jan. 21, 2016) ("Granting conditional certification is very much the norm, and denying it is very much the exception").

"[V]ariations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at [the notice] stage." *Scott v. Heartland Home Finance, Inc.*, No. 01:05-cv-2812, 2006 WL 1209813, *3 (N.D. Ga. May 3, 2006) (granting conditional certification to loan officers despite allegations their duties differed among branches); *see also Pendlebury v. Starbucks Coffee Co.*, No. 04-cv-80521, 2005 WL 84500 (S.D. Fla. Jan. 3, 2005) (granting conditional certification to store managers classified as exempt despite some difference in job duties). *Vondriska v. Premier Mortg. Funding, Inc.*, 564 F.Supp.2d 1330, 1335 (M.D. Fla. 2007). When making the determination at the first "notice" stage, courts do not reach the merits of the case, remaining focused instead on whether the complaint and other allegations show that there are potential class members that (1) desire to 'opt-in' and (2) who are 'similarly situated' with respect to their job requirements and

with regard to their pay provisions." *Thomas v. Waste Pro USA, Inc.*, 360 F. Supp. 3d 1313, 1319 (M.D. Fla. 2019).

In fact, plaintiffs need only demonstrate "a reasonable basis" for the allegation that a class of similarly situated persons may exist. *Grayson v. K-Mart Corp.,* 79 F.3d 1086, 1097 (11th Cir. 1996); *Blankenship,* 2016 WL 47734686, at *4 (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008)). In making this showing, plaintiffs need only show that their "positions are similar, not identical, to the positions held by the putative class members." This "modest factual showing" is usually satisfied through the filing of affidavits of potential class members. *Robinson v. Dolgencorp, Inc.*, No. 506CV-122-OC-10GRJ, 2006 WL 3360944, at *5 (M.D. Fla. 2006). "This determination is made using a fairly lenient standard and typically results in 'conditional certification' of a representative class." *Hipp*, 252 F.3d at 1218. "The key consideration is that to be similarly situated,[3] there must be substantial allegations that potential members were together the victims of a single decision, policy, or plan." *Layton v. Percepta, LLC*, No. 617CV1488ORL41DCI, 2018 WL 3758309, at *2 (M.D. Fla. 2018) (citing *Hart v. JPMorgan Chase Bank, N.A.*, 2012 WL 6196035, at *5). "Evidence of similarly situated employees who desire to opt in may be based on affidavits of other employees, consents to join the lawsuit filed by other employees, or expert evidence on the existence of other similarly situated employees." *Hart*, 2012 WL 6196035, at *2.

Individualized and merits-based defenses are irrelevant at the initial, conditional certification, stage. *See Keller v. HSNi, LLC*, No. 8:10-CV-1198-T-26EAJ, 2010 WL 11629262, at *2 (M.D. Fla. Oct. 28, 2010); *Morrison*, 2021 WL 4477637, at *3 (stating that in ruling on conditional certification, the court's memorandum "does not offer any opinion, ruling, or commentary on the merits of th[e] case"); *Manasco*, 2022 WL 816469, at *7 (stating at the notice stage the court does not resolve factual disputes

---

[3] The similarly situated requirement of § 216(b) is more elastic and less stringent than the requirements of Rule 23 (as to class actions), Rule 30 (as to joinder), and Rule 42 (as to severance). *Grayson*, 79 F.3d at 1095.

as to the merits of the case). Likewise, arguments that a plaintiff's claims are too "individualized" are equally irrelevant at the first notice-stage of conditional certification. *See Vondriska v. Premier Mortg. Funding, Inc.,* 564 F. Supp. 2d 1330, 1335 (M.D. Fla. 2007) ("Variations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at the notice stage").

In *Hipp*, the Eleventh Circuit rejected the defendant's contention that each plaintiff's case was unique and required an individual analysis of his or her working conditions. *Hipp*, 252 F. 2d at 252. The *Hipp* Court found that it was sufficient that the plaintiffs all alleged similar, though not identical, treatment. *Id.* Likewise, in *Morgan*, the Eleventh Circuit noted:

> Family Dollar ignores the overwhelming evidence showing that the Plaintiffs, as a group, shared a number of factual details with respect to their job duties and day-to-day work. Just because the inquiry is fact-intensive does not preclude a collective action where plaintiffs share common job traits.

*Morgan*, 551 F.3d at 1263.

## C.   PLAINTIFFS' EVIDENCE MORE THAN SATISFIES THE LENIENT BURDEN

Applying the lenient standard, numerous district courts throughout the Eleventh Circuit (and elsewhere) have granted conditional certification motions where the plaintiffs allege that their employer made improper wage deductions. *See Wallace v. Advanced Disposal Servs., Inc.,* No. CV-09-J-659-S, 2009 WL 10688142, at *4 (N.D. Ala. Aug. 28, 2009) (finding waste disposal drivers similar situated because they performed similar work and were subject to the same policy—the automatic meal break deduction); *Huff v. Bobcat N. Am., LLC,* No. 619CV861ORL37DCI, 2020 WL 3250178, at *5 (M.D. Fla. Mar. 31, 2020) (granting conditional certification of class of waste disposal drivers who were subjected to an automatic meal break deduction); *Jewell v. Aaron's, Inc.,* No. 1:12-CV-0563-AT, 2012 WL 2477039, at *9 (N.D. Ga. June 28, 2012) (granting conditional certification based on declarations alleging employer applied an automatic meal break deduction to their wages even when they did not receive a break); *Ohsann v. L.V. Stabler Hosp.,* No. 2:07-CV-0875-WKW, 2008 WL

2468559, at *3 (M.D. Ala. June 17, 2008) (same); *Brown v. Maximum Efficiency Squared, LLC*, No. 2:07-CV-889-MEF, 2008 WL 1924983, at *2 (M.D. Ala. Apr. 30, 2008) (granting conditional certification of group of employees who had a variety of jobs because they were all subject to defendant's practice of automatically deducting thirty minutes of pay for a lunch, regardless of whether the employees were able to take a thirty minute lunch break); *Gelber v. Akal Sec., Inc.*, No. 16-23170-CIV, 2016 WL 8678059, at *6 (S.D. Fla. Oct. 5, 2016), *report and recommendation adopted*, No. 16-23170-CIV, 2016 WL 8678541 (S.D. Fla. Oct. 27, 2016) (granting conditional certification of class of employees who were subjected to an automatic meal break deduction regardless of whether they received a meal break or not).

In each case, the allegations that defendant's company-wide compensation policies, procedures, and practices for applying a meal break deduction, regardless of whether a driver received the break, resulted in the underpayment of overtime wages, were sufficient to deem the employees similarly situated. The fact that AmWaste's auto deduction policy applied to all Waste Disposal Drivers, at all locations, regardless of their specific job title, work location, or any other individualized factors demonstrates that all Waste Disposal Drivers are similarly situated for purposes of conditional certification. *See Dyer v. M & M Asphalt Maint. Inc.*, No. 615CV959ORL37KRS, 2016 WL 11586517, at *4 (M.D. Fla. July 5, 2016) (conditionally certifying group of plaintiffs over several locations encompassing several job titles where plaintiffs alleged they were all subject to an automatic meal break deduction regardless of whether they received a meal break or not). Plaintiffs have presented substantial evidence that Plaintiffs and the Putative Class Members were all uniformly subject to the automatic meal break deduction policy and that AmWaste not only knew Plaintiffs and the Putative Class Members worked through their meal break, but also stated they did not care whether the breaks were being taken or not, because the deduction would always be applied (and that time worked would go unpaid). *See* Ex. 1, ¶ 11 ("When I asked my manager at a team meeting why lunches were being deducted from our checks even though we didn't take one, I was told that it simply has to be that

way"); Ex. 2, ¶ 11 ("Even though I told [my manager] David I work through the day and did not take

a meal break, David refused to correct my time"); Ex, 3, ¶ 11 ("Once I tried to take [a meal break] and

[the Yard Manager] got after me. She told me I was not allowed to take a break and needed to keep

working").

Plaintiffs' evidence at this stage far exceeds that which is necessary in the Northern District of

Alabama for company-wide conditional certification. AmWaste automatically deducted (and continues

to deduct) thirty (30) minutes each day from Plaintiffs and the Putative Class Members' on-the-clock

time—and corresponding wages—for a meal break. *See* Exs. 1–4, at ¶ 7. This policy applies to all

Waste Disposal Drivers at all of AmWaste's facilities. *See* Exs. 1–4, at ¶¶ 2, 7. AmWaste is (and has

been) aware that Plaintiffs and the Putative Class Members rarely, if ever, take their full and

uninterrupted 30-minute meal break, yet AmWaste continues to automatically deduct thirty (30)

minutes of their pay each day. *See* Exs. 1–4, ¶¶ 7–12. The result, in practice, of AmWaste policies was

(and is) to deny Plaintiffs and the Putative Class Members compensation for 2.5 to 4 overtime hours

each week. AmWaste's policies apply to Plaintiffs and the Putative Class Members and evinces

AmWaste's systemic failure to comply with the overtime requirements of Section 207 of the FLSA.

### D. ADDITIONAL SIMILARLY SITUATED EMPLOYEES ALREADY HAVE JOINED THE CASE AND MORE WOULD DO SO IF GIVEN NOTICE

In addition to showing that they are similarly situated, district courts in the Eleventh Circuit

"should satisfy [themselves] that there are other employees . . . who desire to opt-in." *Dybach*, 942 F.2d

at 1567. Evidence of similarly situated employees who desire to opt in may be based on affidavits of

other employees, consents to join the lawsuit filed by other employees, or expert evidence on the

existence of other similarly situated employees. *See Vonriska v. Premier Mortgage Funding, Inc.*, 564 F.

Supp. 2d 1330, 1334 (M.D. Fla. 2007).

One additional Waste Disposal Drivers who worked for AmWaste joined the case by filing a

Consent to Join. Further, ten additional drivers wanted to join this case but were prevented due to

arbitration agreements. While no firm line has been drawn regarding the number of opt-ins necessary, without question, these number demonstrates sufficient interest of other Waste Disposal Drivers in seeking to obtain unpaid wages from AmWaste. *See Morrison*, 2021 WL 4477637, at *5 (finding plaintiffs had established others desire to opt in where three plaintiffs had opted in and the declarations stated others would be interested in opting in); *Lemming v. Sec. Forces, Inc.*, No. 8:10-CV-1469-T-23AEP, 2010 WL 5058532, at *1 (M.D. Fla. Dec. 6, 2010) ("The number of plaintiffs necessary to demonstrate a desire to opt in is not many, sometimes as few as two, three, or four"); *Gonzalez v. TZ Ins. Sols., LLC*, No. 8:13-CV-2098-T-33EAJ, 2014 WL 1248154, at *5 (M.D. Fla. Mar. 26, 2014) (finding that "[a]lthough there is no magic number requirement for the notice stage," five opt-in plaintiffs were sufficient to convince the court that others desire to join the action); *Ciani v. Talk of The Town Restaurants, Inc.*, No. 8:14-CV-2197-T-33AEP, 2015 WL 226013, at *2 (M.D. Fla. Jan. 16, 2015) (finding two opt-in plaintiffs were sufficient for conditional certification); *Teahl v. The Lazy Flamingo, Inc.*, No. 2:13-CV-833-FTM-38CM, 2015 WL 179367, at *5–6 (M.D. Fla. Jan. 14, 2015) (same); *Robbins-Pagel v. Puckett*, No. 6:05CV1582 ORL31DAB, 2006 WL 3393706, at *5 (M.D. Fla. Nov. 22, 2006) ("Even a single affidavit or consent to join submitted by another individual stating that they are similarly situated and wish to join the suit is enough to bring the Plaintiff's contentions above pure speculation").

More generally, it is reasonable to assume that where, as here, there are similarly situated employees who have experienced the same FLSA violations, these Putative Class Members would opt-in to the lawsuit if given notice of it. *See Henderson v. Holiday CVS, LLC*, No. 09-80909-CIV, 2010 WL 1854111, at *11 (S.D. Fla. May 11, 2010) (relying on the joinder of opt-ins to demonstrate the interest in others to support conditional certification). Because an additional Waste Disposal Driver joined the case by filing Consents to Join and several more have attempted to join, Plaintiffs have

more than satisfied the participation prong for conditional certification. *See Morrison*, 2021 WL 4477637.

### E.   THE WASTING STATUTE OF LIMITATIONS CONTINUES TO RUN FOR THE PUTATIVE CLASS MEMBERS

Unlike the statute of limitations for a Rule 23 putative class member, the statute of limitations for a putative collective action member under the FLSA is not tolled when the action is commenced. 29 U.S.C. § 256. Instead, the statute of limitations continues to run until the putative collective action member files his or her consent form. *Grayson*, 79 F.3d at 1106. "Early certification protects the class because it allows them to opt-in to the lawsuit and stop the statute of limitations from running as to their claims." *Kerce v. West Telemarketing Corp.*, 575 F. Supp. 2d 1354, 1358 (S.D. Ga. 2008); *Beo v. BTB Servs.*, No. 08-23129-CIV, 2009 WL 482822, at *3 (S.D. Fla. Feb. 25, 2009) ("This Court finds that Plaintiffs would be substantially prejudiced by the continued running of the statute of limitations absent conditional certification to allow Plaintiffs to provide notice to the putative Plaintiff class"). In the FLSA context, judicial notice promotes the remedial purpose of § 216(b) by preventing the erosion of claims due to the running of statutes of limitations. *See Beo*, 2009 WL 482822, at *3 (acknowledging the prejudice to the potential opt-ins by the continued running of the statute of limitations in granting conditional certification of an FLSA collective action).

## V.
## RELIEF SOUGHT

A collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-La Roche*, 493 U.S. at 170. Use of Court-authorized notice also prevents "misleading communications." *Id.* at 172. Plaintiffs therefore seek the issuance of notice to all Putative Class Members and the disclosure of the names and contact information (including the addresses, e-mail addresses and cell phone numbers) of all individuals who worked as Waste Disposal Drivers for

AmWaste during the relevant window of recovery—that is, February 18, 2019 through the final disposition of this matter.

A.    PROPOSED SCHEDULE AND NOTICE/CONSENT FORM

To facilitate the notice process and preserve the rights of those who have not yet opted-in (or learned of this lawsuit), Plaintiffs have attached a proposed Notice and Consent form to be approved by the Court. *See* Ex. 5. This form is based on various Notice and Consent forms previously approved by courts throughout the Eleventh Circuit. Plaintiffs seek to notify a group of potential plaintiffs described as follows:

> **ALL CURRENT AND FORMER WASTE DISPOSAL DRIVERS, WHO DID NOT SIGN ARBITRATION AGREEMENTS AND WHO WORKED FOR AMWASTE, LLC, ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM FEBRUARY 18, 2019 THROUGH THE FINAL DISPOSITION OF THIS MATTER.**

Additionally, Plaintiffs seek an Order from this Court adopting the following schedule:

| DEADLINE | SUBJECT |
|---|---|
| **14 Days from Order Approving Notice to Putative Class Members** | Defendant to disclose the names, addresses, e-mail addresses, telephone numbers, dates of employment, dates of birth, and driver's license numbers of the Putative Class Members in a usable electronic format. |
| **21 Days from Order Approving Notice to Putative Class Members** | Plaintiffs' Counsel shall send by mail, e-mail[4] and text message[5] the Court-approved Notice and Consent Form to the Putative Class Members.<br><br>Defendant shall post a copy of the Notice and Consent Form at all job sites near the clock in device. |
| **60 Days from Notice is Mailed to Putative Class Members** | The Putative Class Members shall have 60 days to return their signed Consent forms for filing with the Court.<br><br>Defendant may take down the posted Notice and Consent Form. |

---

[4] Plaintiffs further request that Putative Class Members have the option to execute their consent forms online through an electronic signature service. This service allows Putative Class Members to sign their consent forms electronically by clicking on a link in an encrypted link, which in turn allows the user to review the document, indicate the user read and understood the consent form, and type additional information. Users are instantaneously provided with a PDF copy of the form, and a copy is accessible to Plaintiffs' Counsel who will, in turn, file the same with the Court. Importantly, this would merely be an additional method for signing the same Court-approved consent form. This also saves costs for those Putative Class Members who do not have access to printers or who do not have easy access to a mail center.

[5] Plaintiffs propose sending a short message with a hyperlink that Putative Class Members can click to view the entire Court-authorized notice. The language below mirrors what Plaintiffs' Counsel has submitted to other courts who have approved notice via text. **"The United States District Court for the Northern Division of Alabama has authorized this text notice to inform you of your right to join a lawsuit for unpaid overtime filed against AmWaste, LLC. Click here to read the Court-authorized notice. If you have questions, please contact the law offices of Anderson Alexander, PLLC at 361-452-1279 or visit A2XLaw.com."** *See Peery v. Nixon Engineering, LLC*, Case No. 6:18-CV-00358, ECF No. 35 (W.D. Tex. Jan. 9, 2020) (attached as Ex. 6).

| | |
|---|---|
| **30 Days from Notice is Mailed to Putative Class Members** | Plaintiffs' Counsel is authorized to send by mail e-mail, and text message a second identical copy of the Notice/Consent Form to the Putative Class Members reminding them of the deadline for the submission of the Consent forms.<br><br>Plaintiffs' Counsel is authorized to call Putative Class Members to ensure the Consent forms were received. |

**B.    COURTS ROUTINELY REQUIRE THE PRODUCTION OF PERSONAL CONTACT INFORMATION FOR THE NOTICE PROCESS**

Courts presiding over collective actions may properly order defendants to produce employee contact information to ensure that "accurate and timely notice concerning the pendency of the collective action" is disseminated to putative class members. *Allen v. Hartford Fire Ins. Co.*, No. 616CV1603ORL37KRS, 2017 WL 3701139, at *18–19 (M.D. Fla. Aug. 25, 2017).

Courts in the Eleventh Circuit, and throughout the United States, routinely require defendants to produce the requested information and allow the issuance of notice through these various requested channels. *See Williams v. Omainsky*, No. 15-0123-WS-N, 2016 WL 297718, at *10 (S.D. Ala. Jan. 21, 2016) ("Last known mailing addresses and telephone numbers have obvious utility to plaintiffs' efforts to track down and notify prospective opt-in plaintiffs")*; see also Wade v. Furmanite Am., Inc.* No. 3:17-cv-00169, 2018 WL 2088011, at *6–7 (S.D. Tex. May 4, 2018) (disagreeing "strongly" with the defendants' position that "first-class mail alone is sufficient to ensure that potential plaintiffs receive notice").

It is common knowledge that "[t]oday, millions of Americans rely on email as their primary method for communication." *Wade*, at 7 (recognizing that first-class mail, like the Pony Express, telegrams, and the fax machine before it, is probably soon to be considered a "relic of a bygone era"). To further quote Magistrate Judge Edison,

> When playing darts, one has a much better chance of hitting a bull's-eye if he uses more than one dart. The same reasoning applies here. Utilizing two means of delivery—first class mail and email—is more likely to result in the potential plaintiffs receiving notice of the lawsuit than by a single delivery method.

*Id.* at *7 (recognizing that social networking might soon replace email as the most effective means of reaching potential class members). Some Courts have begun to recognize that notice sent via email is also losing its ability to inform Putative Class Members of their right to join a collective action and have authorized text-message notice, stating that text-message notice will, "increase the chance of the class members receiving and reading the notice." *Landry v. Swine Oilfield Servs., L.L.C.*, 252 F. Supp. 3d 1079, 1129 (D.N.M. 2017); *Nazih v. Café Istanbul of Columbus, LLC*, No. 2:17-CV-947, 2018 WL 4334613, at *6 (S.D. Ohio Sept. 11, 2018) ("This has become a much more mobile society with one's email address and cell phone number serving as the most consistent and reliable method of communication").

## C. DISSEMINATION OF THE NOTICE FORM SHOULD BE VIA MAIL, EMAIL, TEXT MESSAGE, AND POSTING AT DEFENDANT'S FACILITIES

Plaintiffs request that the Court order AmWaste to provide the names, current or last known addresses, e-mail addresses, and cell phone numbers for current and former employees fitting the description of the conditionally certified class. Accordingly, the distribution and return of notice and consent in this case should be authorized by U.S. Mail, email, and text message. Courts throughout the Eleventh Circuit routinely authorize the distribution and return of notice and consent via email. *See Aguiar v. M.J. Peter & Assocs., Inc.*, No. 20-CIV-60198-RAR, 2020 WL 9349556, at *2 (S.D. Fla. Sept. 10, 2020) (approving notice via US mail, email, and text message); *Kiley v. MedFirst Consulting Healthcare Staffing, LLC*, 297 F. Supp. 3d 1260, 1267–68 (N.D. Ala. 2018) (approving notice via mail and email and suggesting text notice is appropriate where defendants commonly communicated with

plaintiffs via their cell phone)[6]; *Troxel v. Gunite Pros, LLC*, No. CIVILACTION210057WSN, 2022 WL 37525, at *6 (S.D. Ala. Jan. 4, 2022) (approving notice via mail and email); *Pena v. Handy Wash, Inc.*, 28 F. Supp. 3d 1289, 1303 (S.D. Fla. 2014), *as amended* (July 3, 2014) (approving notice via email, fax, mailing, and workplace posting); *Austin v. N3 LLC*, No. 1:21-CV-1354-TWT, 2022 WL 613164, at *3 (N.D. Ga. Mar. 2, 2022) (approving notice via email, mail, and website); *Williams v. Coventry Health Care of Fla., Inc.,* Case No. 6:16-cv-731-Orl-41TBS, 2016 WL 7013530, at *2 (M.D. Fla. Oct. 4, 2016) ("[C]ourts in this district and others have found email to be an appropriate and efficient addition to first class mail in the delivery of notice to a class") (citing *Palma v. Metropcs Wireless, Inc.*, No. 8:13-cv-698-T-33MAP, 2014 WL 235478, at *2 (M.D. Fla. Jan 22, 2014) ("A number of courts have determined that email is an inexpensive and appropriate means of delivering notice of an action to a class"); *Stuven v. Texas de Brazil (Tampa) Corp.*, 2013 WL 610651, at *6 (M.D. Fla. Feb.19, 2013) ("The Court is not persuaded that notice by email is too intrusive, and will permit notice to be made in this manner."); *Alequin v. Darden Restaurants, Inc.*, 2013 WL 3945919, at *2 (S.D. Fla. July 31, 2013) ("Plaintiffs are correct in noting that courts in this Circuit commonly approve email notice to potential opt-in class members in FLSA cases."); *Pieczynski v. LCA Vision, Inc.,* No. 6:20-CV-1457-CEM-DCI, 2022 WL 1238552, at *4 (M.D. Fla. Jan. 14, 2022), *report and recommendation adopted*, No. 6:20-CV-1457-CEM-DCI, 2022 WL 1238574 (M.D. Fla. Feb. 1, 2022) (approving notice via mail and email).

In today's society, text notice, above all other forms of notice, is the method to ensure the accurate Court-approved notice is received by all Putative Class Members, as it effectively bypasses modern society's issues with U.S. mail and email (moving addresses and Spam blockers). *See* Exs. 1–4, ¶ 16; *see also Campo v. Granite Servs. Int'l, Inc.,* No. 1:21-CV-223-AT, 2022 WL 212205, at *9 (N.D. Ga. Jan. 24, 2022) (approving notice via email and text message where plaintiffs provided evidence it

---

[6] Plaintiffs have submitted evidence that text notice is appropriate because AmWaste communicated with Plaintiffs through their cell phones. *See* Exs. 1–4, ¶ 14.

was the best would be a more beneficial method of notice). A phone number rarely changes, whereas individuals regularly move from mailing address to mailing address. *See* Exs. 1–4, at ¶ 16. Further, given the vast rise of Spam emails and Spam blockers (which can at times block the Court-approved Notice), there is no guarantee that all Putative Class Members will see the Court-authorized Notice email under the avalanche of Spam emails we face in today's society. *See Waller v. AFNI, Inc.*, No. 20-CV-1080-JES-JEH, 2020 WL 6694298, at *5 (C.D. Ill. Nov. 13, 2020) ("Further, there is less of a risk that potential class members would find this text message notice to be spam because it relates to a company that an individual has worked for in the past three years or so or may continue to be working"). Notice via email used to be rare, and now is commonplace—the same is beginning to happen with text-notice as courts recognize its far greater ability to reach a Putative Class Member and inform them of their rights. *See Dennis v. Greatland Home Health Servs., Inc.,* No. 19 C 5427, 2020 WL 606784, at *4 (N.D. Ill. Feb. 7, 2020) (ordering notice be sent via U.S. mail, email, and text-message); *Privette*, 2020 WL 1892167, at *6–7 (same); *Owens v. GLH Capital Enter., Inc.*, No. 3:16-CV-1109-NJR-SCW, 2017 WL 2985600, at *5 (S.D. Ill. July 13, 2017) (same); *Alaniz v. Gordon Reed & Assoc.*, No. 6:18-CV-1595, 2020 WL 1137628, at *7 (W.D. La. Mar. 9, 2020) (same); *Wingo v. Martin Transp., Inc.*, 2018 WL 6334312, at *10 (E.D. Tex. Dec. 5, 2018) (same); *Deakin v. Magellan Health, Inc.*, 328 F.R.D. 427, 436 (D.N.M. 2018) ("the Court continues to find that notice by email and text is reasonable in today's mobile society and these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved"); *Lijun Geng v. Shu Han Ju Rest. II Corp.*, No. 18CV12220PAERWL, 2019 WL 4493429, at *20 (S.D.N.Y. Sept. 9, 2019) (noting notice via text is ordinarily granted, especially when the nature of the business entails a high turnover rate); *Hansen v. Waste Pro of S.C., Inc.*, No. 2:17-CV-02654-DCN, 2020 WL 1892243, at *7 (D.S.C. Apr. 16, 2020) (citing cases granting notice via text); *Greene v. Omni Limousine, Inc.*, No. 218CV01760GMNVCF, 2019 WL 2503950, at *6 (D. Nev. June 15, 2019) (granting notice via US

mail, email, and text-message).

In addition, notice should be posted at all of AmWaste's locations where Waste Disposal Drivers have worked in the last three years. *See Rosell v. VMSB, LLC,* No. 20-20857-CIV, 2020 WL 7767879, at *5 (S.D. Fla. July 7, 2020) (approving workplace notice, stating "because the purpose of the exercise is to encourage notice to any interested party in an efficient manner, the Court finds this request reasonable); *Maar v. Beall's, Inc.,* No. 16-CV-14121, 2016 WL 10587201, at *6 (S.D. Fla. Nov. 23, 2016) (approving notice via mail, email, and workplace posting). Finally, the Court should authorize reminder notices half-way through the notice period. *See Troxel v. Gunite Pros, LLC,* No. CIVILACTION210057WSN, 2022 WL 37525, at *6 (S.D. Ala. Jan. 4, 2022) (approving reminder notice); *Austin,* 2022 WL 613164, at *4 (same); *Hubbard v. Jerry's Seamless Guttering, Inc.,* No. 19-CIV-81705-RAR, 2020 WL 6038110, at *4 (S.D. Fla. Oct. 6, 2020) (same); *Rosell,* 2020 WL 7767879, at *5 (same).

## VI.
## CONCLUSION

Plaintiffs have more than met their minimal burden to show that other similarly situated Waste Disposal Drivers exist and are interested in asserting their claims. In order to facilitate the purposes of the FLSA's collective action provisions, Plaintiffs respectfully request that the Court grant this Motion and: (1) conditionally certify this collective action for purposes of notice and discovery; (2) order that judicially-approved notice be sent to all Putative Class Members; (3) approve the form and content of Plaintiffs' proposed judicial notice and reminder notice; (4) order AmWaste to produce to Plaintiffs' counsel the contact information (including the names, address, telephone number and e-mail address) for each Putative Class Member in a usable electronic format; (5) authorize a 60-day notice period for Putative Class Members to join the case; and (6) authorize notice to be sent via First Class Mail, e-mail, text message, and workplace posting to the Putative Class Members.

Date:   August 22, 2022                    Respectfully submitted,

                                           **HARDIN & HUGHES, LLP**

                              By:   /s/ *David A. Hughes*
                                    **David A. Hughes** (ASB-3923-U82D)
                                    dhughes@hardinhughes.com
                                    2121 14th Street
                                    Tuscaloosa, Alabama 35401
                                    Telephone: (205) 523-0463
                                    Facsimile: (205) 344-6188

                                           **ANDERSON ALEXANDER, PLLC**

                              By:   /s/ *Clif Alexander*
                                    **Clif Alexander** *(Admitted Pro Hac Vice)*
                                    Texas Bar No. 24064805
                                    clif@a2xlaw.com
                                    **Austin Anderson** *(Admitted Pro Hac Vice)*
                                    Texas Bar No. 24045189
                                    austin@a2xlaw.com
                                    819 N. Upper Broadway
                                    Corpus Christi, Texas 78401
                                    Telephone: (361) 452-1279
                                    Facsimile: (361) 452-1284

                                    ***Counsel for Plaintiffs and Putative Collective
                                    Members***

## **CERTIFICATE OF CONFERENCE**

I hereby certify that Plaintiffs' Counsel has conferred with Defendant's counsel of record via email and telephone, and Defendant is opposed to the filing of this Motion and the relief requested herein.

*/s/ Clif Alexander*
Clif Alexander

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2022, served a true and correct copy of the foregoing document on Defendant's counsel of record, in accordance with the Federal Rules of Civil Procedure.

*/s/ Clif Alexander*
Clif Alexander
