UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AUSTIN RICHARDS, | } |
| Plaintiff, | } |
| v. | } Case No.: 2:22-CV-221-RDP |
| AMWASTE LLC, | } |
| Defendant. | } |

**MEMORANDUM OPINION AND ORDER**

This case is before the court on Plaintiff's Amended Motion for Conditional Certification and Notice to the Putative Class Members. (Doc. # 46). Plaintiff seeks conditional certification of a class including "all current and former waste disposal drivers, who did not sign arbitration agreements and who worked for Amwaste, LLC, anywhere in the United States, at any time from February 18, 2019 through the final disposition of this matter." (Doc. # 46 at 14). The Motion has been fully briefed. (Doc. # 47, 49). For the reasons discussed below, the Motion is due to be denied.

**I.    Background**

Amwaste provides waste services from facilities in Jefferson County, Mobile County, Pickens County, Montgomery County, and Randolph County, Alabama. (Doc. # 48-1 ¶¶ 2- 3). Amwaste's principal place of business is in Sylvan Springs, Alabama. (*Id*.). The company employs local management at each waste facility and they are responsible for managing and supervising personnel working out of that facility on a day-to-day basis. (*Id*. ¶ 14).

Amwaste employs drivers in a variety of positions, including Roll-Off Drivers, Residential Drivers, and Pump Truck Drivers (collectively "Drivers"). (*Id*. ¶ 4). It also employs "Satellite Drivers," who drive a pickup style vehicle to collect residential trash from areas not on a typical

residential route in the morning and then return to the facility to perform nondriving duties including sorting trash for the remainder of the shift. (Doc. # 48-31 ¶ 5).

Plaintiff Austin Richards worked for Amwaste at its Sylvan Springs, Alabama facility from January 22, 2018 to June 17, 2020. From February 18, 2019[1], until the end of his employment, Richards worked as a Roll-Off Driver. (Doc. # 48-1 ¶ 30). Opt-In Plaintiff Craig Green worked for Amwaste at its Sylvan Springs, Alabama facility from May 1, 2013 to February 18, 2020. (*Id*. ¶ 34). From February 18, 2019, until the end of his employment, Green worked as a Roll-Off Driver. (*Id*.).

Roll-Off Drivers are responsible for hauling waste and debris from high volume construction, residential, industrial, and commercial customers. (Doc. # 48-31 ¶ 5). Roll-Off Drivers do not drive designated routes; rather, they drive to different locations within Amwaste's service areas based on customer requests. (*Id*. at ¶ 8).

Roll-Off Drivers earn a set amount per "action" completed and are not paid on an hourly basis. (Doc. # 48-1 ¶ 23). They complete an "action" by delivering an empty container, picking up a full container, and unloading a full container at a landfill. (*Id*. at ¶ 23). Roll-Off Drivers are eligible for an additional bonus for completing a certain number of actions in a workweek. (*Id*. at ¶ 23). Roll-Off Drivers receive overtime compensation at 1.5 times their regular rate for all hours worked over 40 in a workweek, which is calculated based on their total compensation for the week (including any "action" pay and bonus) and hours worked. (*See, e.g*., *Id*. ¶ 23; Doc. # 4803 ¶ 4).

Residential Drivers are responsible for residential waste removal services and drive routes that vary based on a variety of factors including length, stops, and completion time. (Doc. # 48-31 ¶ 6). Pump Truck Drivers are responsible for cleaning, repairing, and moving portable restrooms.

---

[1] February 18, 2019 is the date that is three years prior to the date the Complaint was filed initiating this action. (Doc. # 1).

(*Id*. ¶ 7). Drivers briefly report to their respective facilities at the beginning and end of their shifts, but they otherwise independently operate their vehicles in the field without supervision throughout the day. (*Id*. ¶ 16). Residential Drivers and Pump Truck Drivers are paid an hourly wage for each hour worked and overtime at 1.5 times their regular rate of pay for hours worked over 40 in a workweek. (*See, e.g.,* Doc. # 48-1 ¶ 22; Doc. # 48-2 ¶ 2).

Consistent with U.S. Department of Transportation ("DOT") regulations, 49 C.F.R. § 395.3(a)(3)(ii), Amwaste requires that each shift Drivers take one 30-minute uninterrupted and unpaid lunch break. (Doc. # 48-1 ¶ 24). The 30-minute lunch break is unpaid because Drivers are not permitted to perform work during their lunch break. (*Id*. ¶ 24). Drivers are instructed to notify Amwaste management if they do not take a 30-minute lunch break so their hours and pay can be corrected. (*Id*. ¶ 25). Nonetheless, Plaintiff and other Amwaste drivers "did not always receive" their "full 30-minute uninterrupted break." (Doc. # 46-1, -2, -3, -4 ¶¶ 2–4). They contend Amwaste deducted 30 minutes from the drivers' pay regardless of whether they actually took their breaks. (Doc. # 46-1, -2, -3, -4 ¶¶ 10-12). However, Amwaste has corrected the pay for Drivers who have reported an issue with their pay or hours. (*See, e.g*., Doc. # 48-1 ¶ 27; Doc. # 48-2 ¶ 6).

In support of his Amended Motion, Plaintiff submitted his own declaration and declarations from Larry Roubdioux, Helen Foley, and Richard Griffin (the "Declarants"). (*Id*.). However, Roubdioux, Foley, and Griffin are barred from bringing claims in this action by arbitration agreements, and their claims have been dismissed. (Docs. # 39, 45). Plaintiff's counsel agreed to the dismissal without prejudice of the claims of all opt-in plaintiffs with arbitration agreements, leaving only Plaintiff Richards and Opt-In Plaintiff Green. (Docs. # 39 at 2, 44). Amwaste has identified a total of 29 potential class members, including Plaintiff and Opt-In Plaintiff Green, who were employed during the relevant time period (February 18, 2019-present) for whom it has been

unable to locate an arbitration agreement. (Doc. # 39 at 2). But from this group the evidence submitted by Plaintiff indicates that the only eligible[2] Amwaste drivers interested in opting in to this case are Plaintiff and Opt-In Plaintiff Green. And, although Opt-In Plaintiff Green has filed a consent, he has not submitted a declaration.

Amwaste has submitted declarations from 29 Drivers employed during the relevant time period, including drivers working out of Amwaste's Sylvan Springs facility, who testified they were always able to take their 30-minute lunch break. (Docs. # 48-2 – 48-30). None of these Drivers indicated an interest in joining this lawsuit. (*Id.*)

## II. Legal Standards Applicable to Conditional Certification

Title 29 U.S.C. 216(b) permits the filing of an "opt-in" collective action for multiple FLSA plaintiffs who are "similarly situated." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008) ("To maintain a collective action under the FLSA, plaintiffs must demonstrate that they are similarly situated."). The purpose of such a collective action is "to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer." *Prickett v. Dekalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003). A district court in its discretion may conditionally certify a collective action if doing so would permit the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged ... activity." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989). The Eleventh Circuit has made clear that before exercising that discretion and "facilitating notice, a district court should satisfy itself that there are other employees who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Morgan*, 551 F.3d at 1259; *see also Dybach v. State of Fla. Dep't of*

---

[2] Eligible employees are those without arbitration agreements. (*See* Docs. # 39, 45).

*Corrs.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991) ("there must be other employees of the [defendant-] employer who desire to "opt-in" and are "similarly situated").

In *Hipp v. Liberty National Life Insurance Co.*, the Eleventh Circuit "suggest[ed]" a "two-tiered approach to certification of § 216(b) opt-in classes" to assist district courts in resolving the similarly situated inquiry. 252 F.3d 1208 (11th Cir. 2001).

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision-usually based only on the pleadings and any affidavits which have been submitted-whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. . . .

*Hipp*, 252 F.3d at 1218.

"Under *Dybach's* first requirement, [however,] a plaintiff must show that there are other employees who desire to opt-in before a court can conditionally certify a class." *Kemar Fung Chung v. Affordable Battery, Inc.*, 2012 WL 3759029, at *1 (S.D. Fla. Aug. 29, 2012) (citing *Dybach*, 942 F.2d at 1567–68). "In making this showing, a plaintiff cannot rely on speculative, vague, or conclusory allegations." *Id*. (citations omitted). "Evidence of similarly situated employees who desire to opt in may be based on affidavits of other employees, consents to join the lawsuit filed by other employees, or expert evidence on the existence of other similarly situated employees," but "plaintiff's or counsel's belief in the existence of other employees who desire to opt in and unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify certification of a collective action and notice to a potential class." *Kirk v. Dr.*

*Goodroof, Inc.,* 2015 WL 1138445, at *2 (M.D. Fla. Mar. 13, 2015) (quoting *Hart v. JPMorgan Chase Bank, N.A.*, 2012 WL 6196035, at *4 (M.D. Fla. Dec. 12, 2012)).

**III.   Analysis**

As noted above, Plaintiff bears the burden of demonstrating that there are other employees who desire to "opt in" to the litigation and that these other employees are similarly situated with respect to their job requirements and pay arrangements. *Dybach*, 942 F.2d at 1567–68. "[U]nsupported expectations that additional plaintiffs will subsequently come forward" are insufficient. *Mackenzie v. Kindred Hosps. East, L.L.C.*, 276 F.Supp.2d 1211, 1220 (M.D. Fla. 2003).

**A.   No Evidence Has Been Presented That Other Employees Desire To Opt-In**

"Evidence of other employees who desire to opt in may be based on affidavits, consents to join the lawsuit, or expert evidence on the existence of other similarly-situated employees." *Rodgers v. CVS Pharmacy, Inc.*, 2006 WL 752831, at *3 (M.D. Fla. Mar. 23, 2006). The mere the fact that there may be evidence of other alleged FLSA violations is not a reasonable basis for concluding that other employees will be interested in joining this lawsuit. *See Mackenzie.*, 276 F. Supp. 2d at 1220. "[C]ertification of a collective action and notice to a potential class is not appropriate to determine whether there are others who desire to join the lawsuit." *Rodgers*, 2006 WL 752831, at *3 (M.D. Fla. Mar. 23, 2006) (citing *Mackenzie*, 276 F.Supp.2d at 1220 (in turn citing *Dybach*, 942 F.2d at 1567-68))). The Eleventh Circuit has instructed that a showing that others desire to opt-in must be made *before* notice is authorized. *See Dybach*, 942 F.2d at 1567–68. And, a plaintiff cannot rely on speculative, vague, or conclusory allegations, see *Rodgers*, 2006 WL 752831, at *3, but rather must set forth "detailed allegations supported by affidavits which

6

successfully engage defendants' affidavits to the contrary." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (internal quotations and citation omitted).

Here, Plaintiff has presented no evidence that there are any other eligible, similarly situated Drivers (other than Green, who has already filed a consent) who are interested in participating in this litigation. In contrast, Defendant has presented the declarations of twenty-nine Amwaste Drivers who testified that they receive a 30-minute lunch break every day, that they do not work during that break, and that they can take the break when and where they choose. (Docs. # 48-2 – 48-30). None of these Drivers indicated an interest in joining this lawsuit. (*Id.*)

In *Manzi v. Hartman and Tyner, Inc.*, the plaintiff sought certification of an FLSA collective action on behalf of himself and other poker dealers for whom the employer took a "tip credit" without complying with the "tip credit" requirements of the FLSA. 2011 WL 2672343, at *2 (S.D. Fla. July 8, 2011). Although the plaintiff submitted three affidavits from other employees who, if permitted to do so, potentially would opt-in, the court held that the plaintiff failed to satisfy his burden of showing that other similarly situated employees wished to join the litigation. *Id*. at *2. As the court observed:

> [N]either Plaintiff nor his affiants have suggested that there are any additional employees, other than themselves, who desire to opt-in. Plaintiff has not submitted any sworn testimony that he knows of any other poker dealers willing to join the suit, nor do any of the affidavits ... declare knowledge of other potential plaintiffs.

*Id*. at *3. The court concluded that "[e]ven after this case has been pending for almost five months, there is still no reason for the Court to believe that anyone else wishes to join this suit. . . ." *Id*. Here, this action has been pending for ten months and there is no evidence of others wishing to join the litigation.

In *David v. Associated Out–Door Clubs, Inc.*, the two named plaintiffs and two other employees who had filed consents "filed identical affidavits, which claim that they know of others

who 'expressed interest[ ] in the case, but they are too scared to join in the law suit [sic] because they still work for Defendant.'" 2010 WL 1730702 (M.D. Fla. April 27, 2010). In denying conditional certification, the court observed that none of the four identified any other employee interested in joining, either in their affidavit or in deposition. *Id*.

Plaintiff has presented no evidence that there are other employees, who are not barred by arbitration agreements, who desire to opt in.[3] Therefore, he has failed to carry his initial burden under *Dybach*, and his Amended Motion is due to be denied. 942 F.2d at 1567–68.

### III.   Conclusion

Because Plaintiff has not met his initial burden of showing that there are other employees who desire to opt in, Plaintiff's Amended Motion for Conditional Certification (Doc. # 46) is **DENIED**. Nevertheless, Plaintiff is granted leave to file an amended complaint adding Opt-In Plaintiff Green as a Plaintiff.

**DONE** and **ORDERED** this November 15, 2022.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[3] Moreover, other district courts have declined to certify classes when there appear to be only a few potential plaintiffs. *See, e.g., Smith v. Washington County Kennel Club, Inc*., 2014 WL 4627437 (N.D. Fla. 2014) (finding five additional opt in members insufficient to certify a class); *Latortue v. Fast Payday Loans, Inc.,* 2010 WL 557712 (M.D. Fla. 2010) (finding adding five opt-in plaintiffs was not sufficient to certify a class); *Rappaport v. Embarq Mgmt. Co*., 2007 WL 4482581 (M.D. Fla. Dec.18, 2007) (finding six opt-in affidavits insufficient to certify class*); Sanders v. Drainfield Doctor, Inc*., 2007 WL 1362723 (M.D. Fla. 2007) (finding class of twelve employees not large enough to justify class treatment).